## JOSEPH JOHN PINKUS, PROSECUTOR, v. CECIL H. MacMAHON, JUDGE, ETC., DEFENDANT.

Submitted October 6, 1942—Decided January 26, 1943.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *Fast & Fast.*

For the defendant, *David T. Wilentz* and *Joseph A. Murphy.*

The opinion of the court was delivered by

DONGES, J. This writ of *certiorari* brings up the conviction of prosecutor in the First District Court of the City of Newark for a violation of the Medical Act. The charge was that he violated *R. S.* 45:9-22 in that "he did commence and continue the practice of medicine and surgery within the meaning of section 45:9-18 of title 45 of the Revised Statutes, without first having obtained and filed a license for such practice."

Prosecutor conducts a food store in the City of Newark where he sells food products and serves meals. He holds college degrees and has studied principally in food chemistry and science, biology and physiology. He sold to the witnesses for the State Medical Board certain trade-name packaged products, known as Sorbex, Tams, Seatab tablets, and Enrich, the exact nature of which is not clear from the record. He advised the witnesses as to their use and gave advice as to diet.

One witness testified that on her first visit to the premises of the prosecutor she told him she had distress in her stomach and pressure around the heart. He told her it came from eating improper foods and advised her not to eat starches or meats but to eat plenty of fruits and vegetables. He gave her a package of Sorbex.

On another visit she told prosecutor that she had a pain under both ears and down the side of her neck. Prosecutor told her her glands were not functioning properly and that she needed iron. He gave her a bottle of Seatabs and told her to take one to four tablets daily.

On a third visit she informed prosecutor that she had an irritation around the waistline and had an itch. Prosecutor informed her that she had an acid condition; that she should not use any common table salt; that she should eat lots of fruit, vegetables and lemons. He gave her a package of Vegebroth and told her to use it twice a day.

Two other witnesses testified to similar incidents and advice upon the occasion of visits to the store of the prosecutor.

The pertinent portion of *R. S.* 45:9-18 defines the practice of medicine as follows:

"Any person shall be regarded as practicing medicine and surgery, within the meaning of this chapter, who * * * holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, or who shall either offer or undertake by any means or methods to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition."

Prosecutor contends that there was no evidence before the trial court of any violation of the statute. In other words, he insists that the conduct described by the witnesses for the State Board does not amount to the practice of medicine and surgery as above defined. We think it does. Whether or not the substances he sold and prescribed are to be classed as medicines or not makes no difference. Clearly prosecutor attempted to diagnose the "physical condition" of the witnesses and to ascribe a cause for its existence and prescribe for such condition.

It is argued that prosecutor was merely engaged in the sale of food and food products, having special knowledge concerning food. But he went far beyond the mere sale of food when he diagnosed alleged ailments of the witnesses and expressed an opinion as to their cause. We think the practices engaged in by the prosecutor come within the inhibition of the act. The case is entirely different from that of *State Board* v. *Maxwell,* 13 *N. J. Mis. R.* 855, where it was held that preaching the triumph of mind over the ills of the body and the power of the will to drive out disease was not a violation.

It is also urged that the section of the statute in question is unconstitutional in that it is unreasonable. The power of the legislature to regulate the practice of medicine has been upheld many times. *State Board* v. *Buettel,* 102 *N. J. L.* 74; *State Board* v. *Kempkes,* 10 *N. J. Mis. R.* 838. The contention is now made that the language of the definition is so broad that it would prohibit the mere casual suggestion by one person to another of treatment that would help a condition described. However that may be, it is not being enforced in this case in any such set of circumstances. Here the prosecutor was engaged in a commercial enterprise. He sold certain products and in connection with their sale attempted to diagnose ailments and conditions and to give advice as to dieting, &c. We think there is nothing unreasonable in prohibiting this practice by other than licensed physicians.

The judgment under review is affirmed, with costs.